UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEGION SYSTEMS, LLC,

    Plaintiff,

v.                                              Case No: 8:20-cv-02321-KKM-CPT

VALIANT GLOBAL DEFENSE
SERVICES, INC.,

    Defendant.
_____

## ORDER

Defendant Valiant Global Defense Services, Inc., moves to dismiss Plaintiff Legion Systems, LLC's amended complaint. (Doc. 29.) Legion opposes the motion. (Doc. 32.) Because Legion states a plausible claim for relief on the face of its complaint, the Court denies Valiant's motion.

### I. BACKGROUND

Valiant is a successor-in-interest to Cubic Global Defense, Inc. (Doc. 26 at 1.) Seeking to leverage Legion's past performance in a certain Mission Training Complex (MTC) and its status as a small business, Cubic sought to team with Legion to submit a proposal for an Army Contract: Solicitation No. W900KK15R0052 Mission Training Complex Capability Support (MTCCS Program). (*Id.* at 2–3.) Legion agreed to team

exclusively with Cubic on the condition that Legion "receive a 'guaranteed' work-share of three percent (3%) of the total contract value 'across all Task Orders' awarded to Cubic under the MTCCS Program." (*Id.* at 5 (emphasis omitted).) In exchange for Legion's exclusivity, Cubic agreed to the guarantee clause, and the two ultimately entered into a Teaming Agreement. (*Id.*) Approximately eight months later, Cubic was awarded one of the prime contracts for the MTCCS Program. (*Id.* at 5–6; Doc. 26-3 at 4.) Per the Teaming Agreement's terms, Cubic then negotiated a subcontract with Legion. (Doc. 26 at 6; Doc 26-2 at 5.)

To the extent that the federal common law of government contracts is not dispositive, the law of the State of California governs the subcontract. (Doc. 26 at 7; Doc. 26-3 at 19.) The Teaming Agreement's guarantee clause also appears in the subcontract. Attachment 5 to the subcontract provides that "Legion shall receive the following work-share allocations: 100% of incumbent work. 3% of the total contract across all Task Orders that Cubic pursues and wins. Not inclusive of Legion Systems, LLC's incumbent work." (Doc. 26-3 at 104.) And Article 55 of the subcontract provides as follows:

> For the duration of this Agreement, the Parties shall be bound on an exclusive basis for the scope of work set forth in Attachment 5, and shall not participate in any effort, individually or jointly with any third party, to offer to the Customer, the U.S. Government, or any third party any proposal with respect to the Program covered hereunder, or enter into any agreement with any such third party with respect to said Program; provided, however, that Cubic shall not be precluded from teaming with other third parties for other work under the Program . . . or for the same scope of work to the extent other suppliers are needed to satisfy the requirements of the Prime Contract . . . .

2

> It is further understood that . . . neither Party shall, during the term of this Agreement, undertake any action or communicate any information to any party which may adversely affect any work of the other Party concerning the subject of this Agreement.

(*Id.* at 27.) Valiant purchased Cubic's rights under the prime contract shortly after the parties executed the subcontract. (Doc. 26 at 7.)

According to Legion, "[f]rom the outset, Valiant wanted to . . . perform the work-share in-house and thereby avoid paying Legion." (*Id.* at 8.) Legion alleges that Valiant neglected or refused to share information about the task orders awarded to Valiant and that Valiant refused to allow Legion to bid on the task orders awarded to Valiant. (*Id.*) Valiant further "continued to refuse to allocate available work-share to Legion, without any explanation and despite Legion's reminders of the 3% guarantee to it." (*Id.*) Legion also alleges that Valiant curtailed the requisite work-share by "electing to perform Legion's work-share itself in-house and/or by using another subcontractor." (*Id.* at 9.) This conduct by Valiant, according to the amended complaint, breached the contract by failing "to allocate sufficient work-share to Legion to equal 3% of the total contract amount of all task orders awarded to Valiant." (*Id.*) And Legion alleges that, when it "brought this to Valiant's attention, Valiant repudiated its obligation to allocate 3% of the work to Legion. Valiant also insisted that Legion renegotiate the Subcontract. This demand to renegotiate breached Valiant's promise that Legion would be guaranteed 3% of the total contract across all task

3

orders." (*Id.*) According to Legion, Valiant attempted to terminate the contract for convenience after its material breach and repudiate its contractual obligations. (*Id.* at 10.)

Legion then filed this action, alleging that Valiant breached the subcontract (Count I), breached the duty of good faith and fair dealing (Count II), breached the subcontract by improperly invoking the termination for convenience clause (Count III), and breached the duty of good faith and fair dealing by improperly invoking the termination for convenience clause (Count IV). (*Id.* at 11–12, 14–15.)

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or

referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted).

## III. ANALYSIS

### A. Legion successfully states a claim as to Counts I and II.

In its amended complaint, Legion brings a breach of contract claim (Count I) and claim for a breach of the duty of good faith and fair dealing (Count II). Legion successfully states claims for both Counts.

#### 1. Valiant's argument that the contract does not guarantee a minimum amount of work fails.

Valiant argues that Legion's complaint fails to state a breach-of-contract claim because the subcontract "does not guarantee Legion a minimum amount of work or, in the alternative, provide for payment to Legion of the contract value of the alleged minimum amount of work, irrespective of whether Legion actually performed the work." (Doc. 29 at 2.) In short, Valiant argues that the text of the subcontract "does not guarantee a 'minimum amount' of work to Legion after the initial task order." (*Id.* at 7 (emphasis omitted).) For support, Valiant relies on a clause near the beginning of the subcontract that states that "[t]here is no guaranteed minimum of Work hereunder that [Cubic] will issue to [Legion] after both Parties have executed this Subcontract beyond an initial Order." (*Id.*; Doc. 26-3 at 5.) This clause—which appears to be part of the subcontract's preamble——forms the backbone of most of Valiant's arguments against Counts I and II.

5

Valiant's argument is on shaky ground. First, a preamble to a contract is an introductory clause that does not typically establish contract rights. See *Westlands Water Dist. v. U.S. Dep't of Interior, Bureau of Reclamation*, 850 F. Supp. 1388, 1406 (E.D. Cal. 1994) ("As a general rule, although a preamble may be useful in interpreting an ambiguous operative clause in a contract, 'it cannot create any right beyond those arising from the operative terms of the document.'" (quoting *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir. 1985))); 17A Am. Jur. 2d *Contracts* § 373 ("'Whereas clauses' are generally viewed as being merely introductory and since recitals indicate only the background of a contract, that is, the purposes and motives of the parties, they do not ordinarily form any part of the real agreement. Generally, they do not have the force of contractual stipulations." (footnotes omitted)). The preamble simply cannot trump the operative provisions of the subcontract, including the guarantee clause in Attachment 5 to the subcontract.

Second, per the provisions of the subcontract itself, Attachment 5—which contains the guarantee clause relating to work-share—outranks the preamble and clarifies the parties' rights. The subcontract contains an order of precedence clause, which states that "[a]ny inconsistency in this Subcontract shall be resolved by giving precedence in the following descending order: (a) these *Articles 1-56*; (b) Attachment 4; (c) Attachment 1; (d) Attachment 3; (e) individual Orders; (f) Attachment 2; and (g) *Attachment 5*." (Doc

1-2 at 25 (emphasis added).) Legion correctly points out that the preamble is not listed in the order of precedence clause. (Doc. 32 at 7.) Instead, the clause lists both the contract articles and Amendment 5. Thus, even if the preamble was a governing provision of the subcontract and even if the preamble's text was inconsistent with Article 55 and Attachment 5 of the subcontract, any inconsistency should be resolved in favor of Article 55 and Attachment 5, which are listed in the order of precedence clause. *Cf.* 17A Am. Jur. 2d *Contracts* § 373 ("If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part must control.").

Lastly, even if the subcontract did not contain the order of precedence clause and the language that Valiant relies upon is not part of the preamble but is equally as operative as Article 55 and Attachment 5, any conflict within the subcontract's text would merely create ambiguity in the subcontract.[1] And when a contract is ambiguous, the Court ought not decide which interpretation is correct at this motion-to-dismiss stage. *See Antao Properties LLC v. First Am. Title Ins. Co.*, No. 8:19-CV-3058-T-33AAS, 2020 WL 1492735, at *4 (M.D. Fla. Mar. 27, 2020) (Covington, J.) ("The Court will not resolve the parties' disagreement over the correct interpretation of the contract at the motion to dismiss

---

[1] In the light of the nature of Indefinite delivery/Indefinite Quantity (IDIQ) contracts and Legion's allegations about the parties' intent, Legion appears to have the better argument: The "reasonable interpretation of the preamble is that it merely acknowledges that the Army promises no work beyond the initial order" and that the "preamble does not contradict, or have any impact whatsoever on the 3% guarantee for the work that the Army does order." (Doc. 32 at 4 (emphasis omitted).) But because the Court is called on to decide only pleading sufficiency at this stage, it does not interpret the subcontract or make conclusions about the parties' intent.

stage. Indeed, the Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment." (citations, quotations, and alterations omitted)).

### 2. Valiant's argument that Legion failed to satisfy required conditions fails.

Valiant also argues that Legion fails to state a claim under Count I because it failed to allege that it met the required conditions for Legion to be awarded task order work. (Doc. 29 at 8-9). This is false. In its amended complaint, Legion alleges:

> [¶ 6] All conditions precedent to the relief requested herein have been satisfied or waived.
>
> [¶ 31] For its part, Legion at all material times satisfied the Subcontract requirements to be entitled to the work that was awarded to third parties or self-performed, and remained ready, willing and able to perform under the Subcontract.
>
> [¶ 33] Legion satisfied the Subcontract requirements to be entitled to the work that was awarded to third parties or self-performed, and was ready, willing and able to perform . . . .

(Doc. 26 at 2, 8–9). Despite what Valiant contends, Legion quite plainly alleged that it met the required conditions to be awarded a task order.

In a motion to dismiss, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage*, 516 F.3d at 1284; *see also Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 702 (1989) ([U]nder settled law, we assume the truth of all properly pleaded material allegations of the complaint . . .

8

and give it a reasonable interpretation by reading it as a whole and its parts in their context." (citations omitted)). Legion pleads factual allegations that it met the required conditions to be awarded a task order, and the Court must accept those allegations as true.

### 3. Valiant's argument that the subcontract contradicts Legion's claim that Valiant breached the Covenant of Good Faith and Fair Dealing fails.

Valiant argues that, since the subcontract does not guarantee a minimum amount of work to Legion, Valiant did not breach any covenant of faith and fair dealing and cannot state a claim under Count II. (Doc. 29 at 9). But Valiant's argument rests on an incorrect assumption. Because the Court finds that Legion plausibly alleges that the subcontract *did* guarantee a minimum amount of work to Legion under Attachment 5 of the subcontract, Valiant's argument fails. (*See* Doc. 26-3 at 103 ("Legion shall receive the following work-share allocations: 100% of incumbent work. 3% of the total contract across all Task Orders that Cubic pursues and wins.").)

Perhaps anticipating that the Court would not accept Valiant's arguments, Valiant drops a footnote asserting that, "assuming *arguendo* the Subcontract guaranteed a minimum 3 percent workshare, Legion is only entitled to receive the difference between the value of the allocated work and Legion's costs of performing the work, not the full value of the 3 percent workshare allocation." (Doc. 29 at 9 n.3.) Legion correctly notes that Valiant both fails to cite to any provision of the subcontract to support this assertion and fails to cite any authority to support striking or dismissing the complaint. (Doc. 32 at 10.)

9

A motion to dismiss under Rule 12(b)(6)—which is concerned with pleading sufficiency under the Federal Rules of Civil Procedure—is the wrong procedural posture through which to contest damages. *See TCC Air Servs., Inc. v. Schlesinger*, No. 05-80543-CIV, 2005 WL 8156838, at *2 (S.D. Fla. Dec. 20, 2005) ("[E]ven if Plaintiffs may have pled the wrong measure of damages (*i.e.*, loss of profits), a motion to dismiss is not the proper method to test the sufficiency of a complaint with respect to measure or elements of damages." (citations, quotations, and alterations omitted)).

Additionally, Valiant argues that Legion's claim should fail because "Legion fundamentally alleges the same facts under Count II as in Count I and seeks the same damages under its good faith and fair dealing claim as under its breach of contract claim." (Doc. 29 at 10.) According to Valiant, Count II is a superfluous claim that should be dismissed. (*Id.*) To support its assertion, Valiant cites *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), *as modified on denial of reh'g* (Oct. 31, 2001) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

*Careau*, however, has been distinguished by other California courts. In *Celador Int'l Ltd. v. Walt Disney Co.*, the defendants argued that, "because the claim is based on the

same facts as the breach of contract claim and seeks the same remedy, it is superfluous." 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004). The court recognized the principle articulated in *Careau* but explained that

> such claims will always be based on the same facts; a certain set of circumstance gives rise to a lawsuit. They will always seek the same remedy; the same remedies are available for both claims. Therefore, the Court should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought. Rather, the challenge brought by *Careau* and its progeny is to distinguish two claims based on the same facts. If they cannot be distinguished, then the natural conclusion is that they are duplicative.

*Id.* The Court in *Celador* ultimately concluded that, because the plaintiffs had distinguished their claims, the claim for breach of the covenant of good faith and fair dealing was not superfluous. *Id.*

The same conclusion holds true here. In its amended complaint, Legion distinguishes its claims by pleading that

> [¶ 52] Valiant materially breached the duty of good faith and fair dealing, including but not limited to, by engaging in the following conscious and deliberate acts, all of which frustrated the agreed common purposes of the Subcontract and disappointed the reasonable expectations of Legion:
>  a. withholding and refusing to allocate the guaranteed work-share to Legion,
>  b. refusing and repudiating its duty to pay Legion an amount equal to 3% of the total contract across all task orders awarded to Valiant,
>  c. insisting that Legion renegotiate less favorable terms under the Subcontract,
>  d. electing to itself perform work-share that should have been allocated to Legion,
>  e. allocating work that could and should be performed by Legion to another subcontractor,
>  f. refusing or neglecting to inform Legion when it would pursue, or

>    choose not to pursue a task order,
>    g. refusing or neglecting to inform Legion when it won or lost a task order competition,
>    h. scheming to deprive Legion of its right to receive benefits under the Subcontract, and
>    i. engaging in conduct that is objectively unreasonable and evidences bad faith and ill will towards Legion.

(Doc. 26 at 13.) Legion explains in its response that it "has alleged [that the] conscious and deliberate misconduct by Valiant after it succeeded to Cubic's rights and obligations under the Subcontract [was] prompted not by an honest mistake, bad judgment, or negligence, but rather in a direct manner that would frustrate the agreed common purpose of the contract and Legion's reasonable expectations." (Doc. 32 at 14 (emphasis omitted).) This bad faith allegation sufficiently distinguishes Legion's breach of bad faith and fair dealing claim from its breach of contract claim. Accordingly, Legion's claim is not superfluous.

### B. Legion plausibly states a claim as to Counts III and IV.

In its amended complaint, Legion alleges that Valiant breached the subcontract by improperly invoking the termination for convenience clause (Count III) and breached the duty of good faith and fair dealing by improperly invoking the termination for convenience clause (Count IV). Valiant argues that it did not breach the subcontract because it properly terminated the subcontract for convenience under Article 30 of the subcontract. (Doc. 29 at 10–11.) The Court disagrees; Legion successfully states claims for both counts.

Article 30 states that the "[b]uyer shall have the right, in addition to any other rights set forth in this Subcontract or any Order issued hereunder, to terminate this Subcontract

12

or any Order issued hereunder, in whole or in part, for convenience at any time." (Doc. 26-3 at 18.) According to Valiant, it permissibly exercised its termination right under the contract, and therefore it cannot violate the implied covenant of good faith and fair dealing. To support its contention, Valiant cites *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992) ("[A]cts in accord with the terms of one's contract cannot without more be equated with bad faith." (quotation omitted)). (Doc. 29 at 10.)

Legion contends, though, that the termination for convenience clause was improperly invoked as pretext for its breach of contract and breach of duty of good faith and fair dealing, citing *Kuffel v. Seaside Oil Co.*, 11 Cal. App. 3d 354 (1970); *KST Data, Inc. v. Northrop Grumman Sys. Corp.*, No. CV-17-5125, 2017 WL 10519637 (C.D. Cal. Aug. 28, 2017); Restatement (Second) of Contracts § 205 cmt. e (Am. Law Inst. 1981) ("Other types of violation [of the duty of good faith and fair dealing include] . . . abuse of a power . . . to terminate the contract."); *Dhillon v. Chevron U.S.A., Inc.*, No. A102567, 2004 WL 2191317 (Cal. Ct. App. Sept. 30, 2004) (unpublished); and *Spindle v. Travelers Ins. Cos.*, 66 Cal. App. 3d 951, 958 (1977), for support. (Doc. 26 at 15-17.)

Under California law, a plaintiff may state a breach of contract claim and a claim for breach of the duty of good faith and fair dealing even when a defendant claims to terminate the parties' contract under a termination clause. *See Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1142 (E.D. Cal. 2017) ("As a matter of law, 'for

13

convenience' termination does not necessarily foreclose suit. . . . [The plaintiff] may assert breach of contract claims even after terminating for convenience."); *KST Data*, 2017 WL 10519637, at *4–6 (denying the defendant's motion to dismiss the plaintiff's claim for breach of contract where the plaintiff contended that the defendant breached the parties' contract by terminating it for convenience without satisfying corresponding obligations and denying the defendant's motion to dismiss the plaintiff's claim for breach of the duty of good faith and fair dealing where the plaintiff plausibly alleged that the manner in which the defendant invoked the termination clause was not within the reasonable expectations of the parties); *see also Spindle*, 66 Cal. App. 3d at 958 ("Cancellation provisions of a contract are subject to the covenant of good faith and fair dealing just as are other provisions of a contract."). Accordingly, Valiant's purported termination of the subcontract under the convenience clause does not automatically foreclose Claims III and IV at this stage.

Legion has presented a plausible claim: that Valiant breached the contract by improperly invoking the convenience clause and also breached the duty of good faith and fair dealing when doing so. (*See* Doc. 26 at 14–17.) To the extent a question of fact remains as to whether Valiant's invocation of the termination clause was improper and breached the duty of good faith and fair dealing, that question is better suited for later determination after discovery. Legion need not prove its case at the motion-to-dismiss stage. Legion must

only state a claim upon which relief may be granted, which it successfully does in Counts III and IV.

## IV. CONCLUSION

Legion's complaint states plausible claims for relief on its face. Accordingly, Valiant's Motion to Dismiss (Doc. 29) is **DENIED**.

**ORDERED** in Tampa, Florida, on August 17, 2021.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge